**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

**CASE NO.:**
**JURY**

**MARY HOPE, Individually**
**and on behalf of All Other Persons**
**Similarly Situated,**

**Plaintiff,**

**v.**

**DEBT CHOICE, INC., LEXXIOM INC.,**
**THE INIGUEZ LAW FIRM, P.C.**
**and MIGUEL INIGUEZ**

**Defendants.**

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT AND**
**JURY TRIAL DEMAND**

Plaintiff Mary Hope, individually and on behalf of all other persons similarly situated,

("Plaintiff") files this Plaintiff's Original Class Action Complaint and Jury Trial Demand

complaining of Defendants Debt Choice, Inc., Lexxiom Inc., The Iniguez Law Firm, P.C, and

Miguel Iniguez.  Plaintiff alleges as follows:

**PARTIES**

1.      Plaintiff Mary Hope is a Texas citizen and a resident of Henderson County, Texas.

2.      Defendant Debt Choice, Inc. ("Debt Choice") is, upon information and belief, a

California company, but which fails to maintain a registered agent in Texas. Its principal

office is located at 1675 Scenic Avenue, Suite 250, Costa Mesa, CA 92626, and

Defendant may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Defendant has not designated or maintained a resident agent for service of process in Texas, as required by statute and engages in business in Texas.

3.    Defendant Lexxiom, Inc. ("Lexxiom") is, upon information and belief, a Nevada Corporation, but which fails to maintain a registered agent in Texas. Its principal office is located at 11690 Pacific Avenue, Suite 100, Fontana, California 92337, and Defendant may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Defendant has not designated or maintained a resident agent for service of process in Texas, as required by statute and engages in business in Texas.

4.    Defendant The Iniguez Law Firm, P.C. ("Iniguez Firm") is, upon information and belief, a California Professional Corporation, but which fails to maintain a registered agent in Texas. Its principal office is located at 8350 Florence Avenue, Suite 2-A, Downey, California 90240, and Defendant may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Defendant has not designated or maintained a resident agent for service of process in Texas, as required by statute and engages in business in Texas.

5.    Defendant Miguel Iniguez ("Iniguez") is a California resident doing business in the State of Texas.  Iniguez may be served at his office located at 8350 Florence Avenue, Suite 2-A, Downey, California 90240, or wherever he may be found.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332

    (d)(2)(A), in that this is a "civil action in which the matter in controversy exceeds the

    sum or value of $5,000,000, exclusive of interest and costs and is a class action which …

    any member of a class of plaintiffs is a citizen of a state different from any defendant."

    Plaintiff seeks, on behalf of the class, in excess of $5,000,000.

7.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c), because: (i)

    Defendants are subject to personal jurisdiction throughout the state; (ii) upon information

    and belief, Defendants transact business or perform debt management services for

    residents of Texas in the State and in the District despite not being properly registered

    with the Texas Office of Consumer Credit Commissioner; (iii) upon information and

    belief, Defendants further transact business in the State and in the District because they

    allegedly attempt to help residents of this District consolidate or negotiate debts; (iv)

    upon information and belief, Defendants have committed illegal acts in the District by

    failing to properly register their businesses in the State of Texas, and (v) a substantial part

    of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

8.  This case is about a scheme and conspiracy by Defendants to take advantage of some of

    the most vulnerable members of society – those who are facing a personal economic

    crisis and have few options available to them.  Defendants prey on consumers who are

    unable to pay their debts by offering "services" to help reduce the debts.  In reality,

Defendants provide virtually no services and charge unconscionable amounts to victims like Plaintiff and the class members – all in violation of Texas law.

9.      The Texas Legislature has deemed it necessary to protect debtors from unscrupulous sellers of debt management services.  *See,* Chapter 394 of the TEXAS FINANCE CODE (The Debtor Assistance Act, hereinafter the "TDAA").  "The purpose of [the TDAA] is to protect consumers who contract for services with debt management services providers." TEX. FIN. CODE § 394.201 (a).  Defendants have wholly failed to comply with that statute and have denied Plaintiff and class members the very protections the Texas Legislature mandated in passing that law.

10.     As an example of the Defendants' abhorrent conduct, Defendants have violated several laws to take advantage of Plaintiff, an 87 year-old widow living on social security in East Texas who allegedly owed $8200 on a Chase Bank debt.  Defendants Debt Choice and Iniguez Firm solicited her in order to help her reduce the debt.  In exchange for paying them over $1750 in fees, the sole "services" provided were two one-paragraph form letters to Plaintiff's creditors that were computer generated with electronic signatures.

**Debt Choice**

11.     One or more of the Defendants placed advertisements to be seen on television in many states, including Texas, concerning the consolidation of debts and giving the contact number for Defendant Debt Choice.

12.     Plaintiff saw one such advertisement while watching television in Henderson County, Texas.  Plaintiff called Debt Choice to seek help with her consumer debts.  Debt Choice presented, simultaneously, two contracts to Plaintiff for execution: a form contract for

Debt Choice's services and a form contract for Defendant Iniguez Firm's services.  After repeated calls from Debt Choice, Plaintiff signed both form contracts on April 1, 2009.

13.     The sole "consideration" provided by Debt Choice was the referral to the Iniguez Firm. However, at the time Plaintiff signed the contract with Debt Choice, Debt Choice had already referred Plaintiff to Iniguez Firm as can be seen from the presentation to her of the Iniguez Firm's form contract.  Thus the sole "consideration" provided by Debt Choice – the referral to the Iniguez Firm – occurred *before* she contracted with Debt Choice.

14.     Debt Choice's referral to the Iniguez Firm was a referral to a lawyer.  The contract between Plaintiff and Debt Choice provides that Plaintiff's first payment to Iniguez Firm will be paid to Debt Choice as a referral fee.  "I understand that making a payment, (sic) equal to the first program payment is paid to Debt Choice and is not paid to my creditors."  The "program payment" was set out in the alleged contract between Plaintiff and Iniguez Firm.  Under Texas law, Debt Choice was prohibited by law from accepting money or anything of value to solicit employment for the Iniguez Firm.  TEX. PENAL CODE § 38.12.

15.     Even if a valid contract existed between Plaintiff and Debt Choice, Debt Choice failed to provide any consideration to Plaintiff.  The sole "service" Debt Choice provided was a referral to the Iniguez Firm.  However, Iniguez Firm is not licensed in the State of Texas to provide debt management services.  Thus, to the extent a valid contract existed between Plaintiff and Debt Choice, Debt Choice breached that contract by referring Plaintiff to a firm that could not legally engage in debt management services in Texas.

16.     The Debt Choice form contract lists a web address of "http://www.mydebtchoice.com."

However, as of March 17, 2011, that site is "under construction."

17.     Upon information and belief, Debt Choice used the same form contract for other class

members and engaged in similar conduct regarding other class members.

**Iniguez Firm**

18.     The Iniguez Firm's form contract calls for Iniguez Firm to provide the following legal

services:

- Negotiating in an attempt to settle Client's debts.

- Administering, managing, and reporting on Client's funds held by Bank of
  America and a subscription to Law Firm's monthly newsletter, for which
  Iniguez Firm charges a whopping *$65 a month!*

As if the $65 per month charge was not outrageous enough on its face, as shown in

Iniguez Firms' own file, it only sent two "monthly newsletters" in the 17 months of the

parties' relationship.   Those were generic one page documents of information easily

obtained from many other sources on the web.

19.     Iniguez Firm is a California law firm.   Upon information and belief, Iniguez Firm has

clients all over the country.   For instance, Iniguez Firm claims to have "associated"

counsel in Texas and Florida. Yet Iniguez Firm consists of a single employee –

Defendant Iniguez.  Defendant Iniguez has claimed under oath that all of the services for

Plaintiff were performed by employees of the Iniguez Firm (which would be him alone):

> Q. And in the last sentence [of his supplemental response to an
> interrogatory] you stated under oath that all of the services provided under
> the Legal Representation Agreement between the firm and Mrs. Hope
> were performed by the firm and its employees; is that correct?
>
> A. Yes.
>
> Q. And was that a true statement?

A. Yes.

20.     Mr. Iniguez later testified under oath that the firm's employees did not perform all the services provided under the Legal Representation Agreement between the Iniguez Firm and Plaintiff.  In fact, he claims in that deposition that the large majority of the alleged services performed for Plaintiff were performed by Defendant Lexxiom's employees.

21.     The sole "services" performed for Plaintiff by employees of the Iniguez Firm was sending three one-page "form letters" with Defendant Iniguez's electronic signature (one to Plaintiff, and two to Plaintiff's creditors). For those "services," Iniguez Firm charged Plaintiff in excess of $1750.

22.     Upon information and belief, Iniguez Firm is simply a front for Defendant Lexxiom.

23.     Employees of Lexxiom prepared and mailed all three form letters.

24.     Although Iniguez Firm ostensibly has clients all over the country, the firm has only one employee.

25.     Most businesses have a web site to attract clients, but many scam artists have a web site to create the appearance of legitimacy.  Iniguez Firm has a web site – giving the appearance of legitimacy – but then has a "contact us" page that provides no contact information at all.  There is no phone number, fax number, email, or address on that or any page on the web site – no way at all for people to "contact us."

26.     Iniguez Firm's "letterhead" gives a P.O. Box in Rancho Cucamonga, California, as the firm's address.   Yet, Respondent does not have an office in Rancho Cucamonga, California.  Nor does Respondent rent a post office box there.  According to Defendant Iniguez, Lexxiom owns that P.O. Box.

27.     Iniguez Firm also lists its address as P.O. Box 4849 Downey, CA.   According to Defendant Iniguez, that too is actually Lexxiom's post office box.

28.     The second item on the first page of the Iniguez Firm's file for Plaintiff identifies who the client's law firm is.  A law firm's own files of its own clients would not need to list the identity of the client's law firm.   Upon information and belief, the file is actually Lexxiom's file.

29.     According to Defendant Iniguez, Iniguez Firm's 1-800 number was actually paid for and answered by Lexxiom Inc.

30.     The Iniguez Firm's form contract is a debt management service contract under TEX. FIN. CODE § 394.202 (6)(B) because the contract is for arranging or assisting a consumer to arrange for the distribution of one or more payments to or among one or more creditors of the consumer in full or partial payment of the consumer's obligation.

31.     The Iniguez Firm's form contract is a debt management service contract under TEX. FIN. CODE § 394.202 (6)(B) because negotiating in an attempt to settle certain debts with Client's creditors is, by definition, arranging for the distribution of payments to the creditor in full or partial payment of the consumer's obligations.  The very essence of the negotiation service is to arrange for a payment of less than the amount owed to constitute full payment of the consumer's obligation.

32.     The Iniguez Firm's form contract is a debt management service contract under TEX. FIN. CODE § 394.202 (6)(B) because the Legal Services Agreement includes in the $65 monthly fee a charge for the following service:

> [T]he administration, management and reporting of Client's funds held by the Bank of America.

33.     Defendant Iniguez has admitted under oath:

> Q. Okay.  Under the firm's contract with Hope is the firm responsible for the administration, management and reporting of a client's funds that are held by Bank of America?
>
> A. Pursuant to the contract, yes.

34.     Defendant Iniguez has admitted under oath:

> Q. Was the purpose of the Bank of America account to distribute Mrs. Hope's money to Mrs. Hope's creditor in full or partial payment of her obligations to that creditor?
>
> A. Yes, that's the purpose of the Bank of America account.

35.     The Iniguez Firm's form contract is a debt management service contract under Tex. Fin. Code § 394.202 (6)(C) because it gives Iniguez Firm the power of exercising control, directly or indirectly, or arranging for the exercise of control over funds of a consumer for the purpose of distributing payments to or among one or more creditors of the consumer in full or partial payment of the consumer's obligations.

36.     The Iniguez Firm's form contract is a debt management service contract under Tex. Fin. Code § 394.202 (6)(C) because Iniguez Firm was clearly exercising control – directly – over funds of a consumer for the purpose of distributing payments to or among one or more creditors of the consumer (including payment to Iniguez Firm as a creditor of Ms. Hope) in full or partial payment of the consumer's obligations

37.     The Iniguez Firm's form contract is a debt management service contract under Tex. Fin. Code § 394.202 (6)( B and C) because it gave Iniguez Firm the following authority:

G.  Authorizations.  Client authorizes Law Firm to take all steps it deems to be appropriate in any matter including negotiation, compromise, and settlement, including, but not limited to, the following: …

4.  To issue checks, drafts, electronic deductions, or other debits against Client's Settlement Deposit Account located at Bank of America, including any and all deductions from said funds for the purpose of payment of fees due Law Firm under the terms of this Agreement.

38.     Iniguez Firm is not a licensed provider of debt management services in Texas.

39.     The dispute as to whether the contract between Plaintiff and Iniguez Firm is void for failure of the Iniguez Firm to be a licensed provider of debt management services in Texas was submitted to arbitration.  The arbitrator found that "The legal services contract between the parties is void because … it is an agreement for debt management service. Respondent [Iniguez Firm] is not a registered debt management service under Texas law."  That finding is final and binding on Defendant Iniguez Firm.

40.     Iniguez Firm is a professional who knowingly accepts employment within the scope of the person's license, registration, or certification that results from the solicitation of employment in violation of TEX. PENAL CODE § 38.12 (a).

41.     Upon information and belief, Iniguez Firm used the same form contract for other class members and engaged in similar conduct regarding other class members.

**Iniguez**

42.     Defendant Iniguez is the owner and only employee of Iniguez Firm.  All actions by Iniguez Firm alleged in this complaint were performed by Iniguez.

43.  Upon information and belief, Defendant Iniguez paid or gave or offered to pay or give Debt Choice money or anything of value to solicit employment of Plaintiff in violation of Tex. Penal Code § 38.12 (a)(4).

44.  Upon information and belief, Iniguez is a professional who knowingly accepted employment within the scope of the person's license, registration, or certification that results from the solicitation of employment in violation of Tex. Penal Code § 38.12 (a).

45.  Upon information and belief, Iniguez engaged in similar conduct regarding other class members.

**Lexxiom**

46.  Iniguez Firm's form contract clearly and unequivocally provides what anyone would expect when hiring a law firm – that *the law firm* will provide the legal services: "Responsibilities of Law Firm:  *Law Firm shall perform* the legal services called for under this agreement … ." (emphasis added).  That representation was false.

47.  Iniguez Firm employs a bait and switch scam wherein an undisclosed and non-attorney corporation, Defendant Lexxiom, allegedly performs the services called for in the legal services contract.

48.  Most businesses have a web site to attract clients, but many scam artists have a web site to create the appearance of legitimacy.  Lexxiom has a web site, but the site also lacks any contact information, and while they claim to have a link to their "contact" page on their home page, it is disabled.  http://www.lexxiom.com/.

49.  While Iniguez and Iniguez Firm purport to represent debtors like the Plaintiff, according to Iniguez it is Lexxiom who performs most if not all "services" on the file.  Lexxiom

pays for all telephone numbers and post office boxes for Iniguez and Iniguez Firm regarding work associated with debt management services.  While Iniguez is the sole employee of his Iniguez Firm, Lexxiom employees purportedly have done the lion's share of the minimal work on the Plaintiff's file.

50.     Iniguez and the Iniguez Firm admittedly turned over Plaintiff's confidential financial information to Lexxiom.

51.     Upon information and belief, Lexxiom engaged in similar conduct regarding other class members.

**Conspiracy**

52.     Each of the Defendants conspired with one or more of the other Defendants to engage in the unlawful conduct described herein.  Specifically, each Defendant conspired with one or more of the other Defendants to obtain money from consumers, including Plaintiff, for debt management services without the provider of such services being licensed as required by Texas law.

53.     Each Defendant was aware that one or more of the other Defendants sought to obtain money from consumers, including Plaintiff, for debt management services without the provider of such services being licensed as required by Texas law.

54.     Each Defendant formed the specific intent to assist one or more of the other Defendants to obtain money from consumers, including Plaintiff, for debt management services without the provider of such services being licensed as required by Texas law.

55.     Each of the actions by Defendants alleged above were made in furtherance of the Defendants' conspiracy to obtain money from consumers, including Plaintiff, for debt

management services without the provider of such services being licensed as required by Texas law.

**Damages**

56.     As a direct and proximate result of the Defendants' actions set out above, Plaintiff and each class member has been damaged in an amount equal to all payments they have made under their purported contracts with one or more of the Defendants.

57.     The foregoing acts and omissions of the Defendants were undertaken willfully, intentionally, knowingly, and/or in gross disregard of the rights of the Plaintiff and class members.

58.     The foregoing acts and omissions of the Defendants were undertaken indiscriminately and persistently, as part of their regular and routine course of business, and without regard to or consideration of the rights of the Plaintiff.

## <u>CLASS ACTION ALLEGATIONS</u>

59.     Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this suit individually and as representative of a class of similarly situated persons.   The court should enter an order to certify a plaintiff class all individuals:

  (1) who have either

    (a) signed a "Legal Service Agreement" with the Iniguez Law Firm, P.C.; or

    (b) signed a "Debt Choice Client Agreement" with Debt Choice, Inc.; or

    (c) Lexxiom has access to a "Client Data File" for the individual; and

(2) whose address at the time of the contract or creation of the "Client Data File" was in Texas according to the records of any one of the Defendants.

60.    Specifically excluded from the class are all Federal judges and members of their families within the first degree of consanguinity, and the officers, directors and counsel of record of Defendants, and all employees of any Defendant.

61.    The proposed Plaintiff class meets the prerequisites of a class.

62.    The class is so numerous that joinder of all members is impracticable.  Plaintiff is unable to state the exact number of the members of the class without the discovery of information available to Defendants, but upon information and belief, aver that there are hundreds or thousands of class members. The number of the members of the class makes it impracticable to bring them all before the court.

63.    There are questions of law and fact common to the class.  These questions predominate over any questions affecting only individual members of the class.  The questions of fact and law affecting the class as a whole, include, but are not limited to:

- whether the contract between Debt Choice and each class member is void for lack of consideration;

- whether the contract between Debt Choice and each class member is void for failure of consideration;

- whether the Defendant Iniguez Firm was required to register with the Texas Office of Consumer Credit commissioner under the TDAA.

- whether Defendant Iniguez Firm's failure to meet the requirements of the TDAA render the contract between Defendant and class members void.

- whether the Defendant Lexxiom was required to register with the Texas Office of Consumer Credit commissioner under the TDAA.

- whether Defendants' violations of the TDAA entitle the consumers to recover from Defendants all amounts paid by the consumers;

- whether Defendants' violations of the TDAA entitle the consumers to recover from Defendants all costs paid by the consumers;

- whether Defendants' violations of the TDAA entitle the class to recover from Defendants attorney's fees,

- whether Defendants' violations of the TDAA entitle the class to recover punitive damages;

- whether Defendants' violation of the TDAA entitle the class to injunctive relief;

- whether Defendants were unjustly enriched by class members;

- whether Defendants hold money that belongs to class members in equity and good conscience;

- whether the Defendants engaged in a conspiracy;

- whether Defendants are liable to Plaintiff and all class members for all payments made to Defendants as a result of the conspiracy; and

- whether class members are entitled to punitive and exemplary damages against any or all Defendants.

64.   Plaintiff's claims are typical of the claims of the class.  The claims have the same essential characteristics as the claims of the members of the class as a whole and are

based upon identical legal theories.  It is the same course of conduct that serves as the gravamen of the claims against Defendants.  The members of the class have suffered the same type of injury and possess the same interests as Plaintiff.  The single resolution of these claims would be preferable to a multiplicity of similar actions.

65.    Plaintiff, as the representative party, will fairly and adequately protect the interests of the class.  The counsel representing Plaintiff and the class are qualified, experienced and able.

66.    This suit is maintainable as a class action under Fed. R. Civ. P. 23 (b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

67.    This suit is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

68.    *Predominance*.  The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.  The facts that are disputed will be resolved without the participation of individual class members.  Plaintiff's claims do not present individual questions of causation or reliance.  The facts of Defendants' practices are common to all members.

69.    *Superiority*.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Given the large size of the class, individual adjudication of the claims would require hundreds of lawsuits.  Moreover, intervention and joinder

would require the intervention or joinder of hundreds of parties.  Individual adjudication, intervention, and joinder, therefore, are not reasonable options.  Class treatment is superior to all other methods of adjudicating the claims of the putative class.

70.     *Individual control*.  The interests of members of the class in individually controlling the prosecution or defense of separate actions do not outweigh the benefits of class treatment. Members of the class possess claims for economic damages that in most instances do not exceed a few thousand dollars.  Thus, no individual class member possesses an overriding interest in the right to retain counsel and litigate to conclusion an individual claim.  In fact, individual adjudication of these claims remains wholly impractical.  The class members would be compelled to spend substantially more money on attorney's fees and case costs to prosecute their individual claim than the amount of each individual claim.  The interest of members of the class in individually controlling the prosecution or defense of separate actions, therefore, does not outweigh the benefits of class treatment.

71.     *Other factors*.  On information and belief, there are few if any other cases pending by or against members of the class raising the claims asserted herein.  This Court is the desirable forum for this controversy because the Defendants transact business in this District.  No significant difficulties are likely to be encountered in the management of a class action.  Plaintiff will be able to identify class members through discovery of Defendants' extensive computer databases storing information regarding past and present consumer clients.  Thus, no difficulties exist regarding the identification of class members.

<u>**COUNT 1: AS TO DEBT CHOICE:**</u>

<u>**CLAIM FOR DAMAGES FOR LACK OF CONSIDERATION**</u>

72.    Under Texas law, past consideration will not support a contract.  *Franks v. Brookshire Bros., Inc.*, 986 S.W.2d 375, 378 (Tex. App. – Beaumont 1999, no pet.)("past consideration will not support a subsequent promise because "consideration" is a present exchange bargained in return for a promise."); *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 659 (Tex. 2006) (Jefferson, C.J., concurring) (noting that " 'past consideration' is not consideration"); *Roark v. Stallworth Oil and Gas, Inc*., 813 S.W.2d 492, 495 -496 (Tex. 1991)("Consideration is a present exchange bargained for in return for a promise.").

73.    "If anything in the classical law of contracts is clear, it is that past consideration is not good consideration. Any exchange has to be contemporaneous by definition, because the promise and the consideration for that promise must serve as reciprocal conventional inducements."  *Trilogy Software, Inc. v. Callidus Software, Inc*., 143 S.W.3d 452, 463 (Tex. App. – Austin 2004, pet. den.), quoting Jordan Leibman & Richard Nathan, *The Enforceability of Post-employment Noncompetition Agreements Formed After At-Will Employment Has Commenced: the "Afterthought" Agreement*, 60 S. Cal. L.Rev. 1465, 1528-29 (1987).

74.    The sole alleged consideration for the Debt Choice contract is the past "referral" to the Iniguez Firm.  As this "referral" was made when Debt Choice presented the Iniguez Firm contract to Plaintiff, this alleged consideration was made before the contract with

Debt Choice was entered.

75.     Since past consideration will not support a contract, there was no consideration for the contract between Plaintiff and Debt Choice.  Similarly, there was no consideration for the contract between each class member and Debt Choice.

76.     Plaintiff and each class member are entitled to recover from Debt Choice all sums they paid to Debt Choice either directly or through another Defendant or third party.

### COUNT 2: AS TO DEBT CHOICE:

### CLAIM FOR RELIEF FOR FAILURE OF CONSIDERATION.

77.     If the Court finds that there is a valid and enforceable contract between Defendant Debt Choice and class members, then Plaintiff pleads in the alternative that there has been a failure of consideration.

78.     The Iniguez Firm is not licensed in the State of Texas to provide debt management services.  Thus, the consideration for the contract has failed and/or Debt Choice breached the contract.

79.     Plaintiff and each class member are entitled to recover from Debt Choice all sums they paid to Debt Choice either directly or through another Defendant or third party.

<u>COUNT 3:  AS AGAINST INIGUEZ FIRM:</u>

<u>CLAIM FOR DAMAGES FOR VIOLATIONS OF THE TEXAS FINANCE CODE</u>

80.     Plaintiff is a consumer as defined by the TDAA because she is an individual who resides in this state and entered a debt management service agreement with Iniguez Firm. TEX. FIN. CODE § 394.202 (4).

81.     Defendant Iniguez Firm is a "debt management service" provider as defined by the TDAA and subject to that Act because it is arranging or assisting a consumer to arrange for the distribution of one or more payments to or among one or more creditors of the consumer in full or partial payment of the consumer's obligations.  TEX. FIN. CODE § 394.202 (6)(B).

82.     Defendant Iniguez Firm is a "debt management service" provider as defined by the TDAA and subject to that Act because it is exercising control, directly or indirectly, or arranging for the exercise of control over funds of a consumer for the purpose of distributing payments to or among one or more creditors of the consumer in full or partial payment of the consumer's obligations.  TEX. FIN. CODE § 394.202 (6)(C).

83.     The TDAA applies to Defendant Iniguez Firm because it both solicits and contracts with consumers located in Texas.  TEX. FIN. CODE § 394.203 (b).

84.     Defendant Iniguez Firm is not exempt from having to register under the TDAA to provide debt management services.

85.     The TDAA requires as a prerequisite to doing business in Texas that a debt management service provider register with the Commissioner of the Texas Office of Consumer Credit Commissioner ("OCCC").

> A person, regardless of whether located in this state, may not provide a debt management service to a consumer in this state unless the person is registered with the commissioner.

TEX. FIN. CODE § 394.204(a).  Defendant Iniguez Firm is not registered under the TDAA.

86.     The TDAA further provides that "an agreement for debt management services between a consumer and a person that is not registered under this subchapter is void."  TEX. FIN. CODE § 394.215 (a).

87.     The TDAA provides for the following relief:

> (b) A consumer is entitled to recover all fees paid by the consumer under a void agreement, costs, and reasonable attorney's fees.
>
> (c) In addition to any other remedies provided by this subchapter, a consumer who is aggrieved by a violation of this subchapter … may recover:
>
> > (1) actual damages;
> >
> > (2) punitive damages for acts or practices under a void agreement; and
> >
> > (3) the costs of the action, including reasonable attorney's fees based on the amount of time involved.

TEX. FIN. CODE § 394.215.

88.     Plaintiff and each class member are entitled to recover as actual damages from Iniguez Firm all sums they paid to Iniguez Firm either directly or through another Defendant or third party.

89.     Plaintiff and class members are entitled to recover punitive damages from Iniguez Firm.

90.     Plaintiff, individually and as representative of the class, has been forced to retain counsel to assist in bringing this action.  As such, Defendant Iniguez Firm is liable to the Plaintiff and the class for reasonable attorneys' fees and costs of this action.

## COUNT 4:  AS AGAINST INIGUEZ AND INIGUEZ FIRM:

## INJUNCTION AGAINST VIOLATIONS OF THE TEXAS FINANCE CODE

91.      Defendant Iniguez is a "debt management service" provider as defined by the TDAA and subject to that Act because he is arranging or assisting a consumer to arrange for the distribution of one or more payments to or among one or more creditors of the consumer in full or partial payment of the consumer's obligations.   TEX. FIN. CODE § 394.202 (6)(B).

92.      Defendant Iniguez is a "debt management service" provider as defined by the TDAA and subject to that Act because he is exercising control, directly or indirectly, or arranging for the exercise of control over funds of a consumer for the purpose of distributing payments to or among one or more creditors of the consumer in full or partial payment of the consumer's obligations.  TEX. FIN. CODE § 394.202 (6)(C).

93.      The TDAA applies to Defendant Iniguez because he both solicits and contracts (through his law firm) with consumers located in Texas.  TEX. FIN. CODE § 394.203 (b).

94.      Defendant Iniguez is not exempt from having to register under the TDAA to provide debt management services.

95.      The TDAA requires as a prerequisite to doing business in Texas that a debt management service provider register with the Commissioner of the Texas Office of Consumer Credit Commissioner ("OCCC").

> A person, regardless of whether located in this state, may not provide a debt management service to a consumer in this state unless the person is registered with the commissioner.

TEX. FIN. CODE § 394.204(a).  Defendant Iniguez is not registered under the TDAA.

96.     Defendant Iniguez's and Iniguez Firm's violations of the TDAA entitle Plaintiff and the

class to injunctive relief. The TDAA provides for the following relief:

> An aggrieved consumer may sue for injunctive and other appropriate equitable
> relief to stop a person from violating this subchapter.

TEX. FIN. CODE § 394.215 (d).

97.     Plaintiff, individually and as representative of the class, asks the Court to enter an

permanent injunction against Iniguez and Iniguez Firm prohibiting both from entering

any contract for debt management services with a person located in Texas, performing

any debt management services regarding a person located in Texas, or assisting any other

person or entity in performing any debt management services regarding a person located

in Texas.

98.     Plaintiff, individually and as representative of the class, has been forced to retain

counsel to assist in bringing this action.   As such, Defendant Iniguez and the Iniguez

Firm are liable to the Plaintiff and the class for reasonable attorneys' fees and costs of

this action.

## COUNT 5:  AS AGAINST LEXXIOM:

## CLAIM FOR DAMAGES FOR VIOLATIONS OF THE TEXAS FINANCE CODE

99.     Defendant Lexxiom is a "debt management service" provider as defined by the TDAA

and subject to that Act because it is arranging or assisting a consumer to arrange for the

distribution of one or more payments to or among one or more creditors of the consumer

in full or partial payment of the consumer's obligations.   TEX. FIN. CODE § 394.202

(6)(B).

100.   Defendant Lexxiom is a "debt management service" provider as defined by the TDAA and subject to that Act because it is exercising control, directly or indirectly, or arranging for the exercise of control over funds of a consumer for the purpose of distributing payments to or among one or more creditors of the consumer in full or partial payment of the consumer's obligations.  TEX. FIN. CODE § 394.202 (6)(C).

101.   The TDAA applies to Defendant Lexxiom because the TDAA "applies to a person who seeks to evade its applicability by any device, subterfuge, or pretense." TEX. FIN. CODE § 394.203 (e).   Defendant Lexxiom has created a device, subterfuge, and/or pretense wherein consumers contract with Defendant Iniguez Firm to provide debt management services when, in fact, Lexxiom will be providing the services.   In addition, upon information and belief, Lexxiom either instigated or knew of the television advertisements that appeared in Texas that ultimately resulted in their provision of debt management services to Plaintiff and the class members.  Thus, Lexxiom is subject to the TDAA.

102.   Defendant Lexxiom is not exempt from having to register under the TDAA to provide debt management services.

103.   The TDAA requires as a prerequisite to doing business in Texas that a debt management service provider register with the Commissioner of the Texas Office of Consumer Credit Commissioner ("OCCC").

> A person, regardless of whether located in this state, may not provide a debt management service to a consumer in this state unless the person is registered with the commissioner.

TEX. FIN. CODE § 394.204(a).  Defendant Lexxiom is not registered under the TDAA.

104. The TDAA further provides that "an agreement for debt management services between a consumer and a person that is not registered under this subchapter is void." TEX. FIN. CODE § 394.215 (a).

105. The TDAA provides for the following relief:

> (b) A consumer is entitled to recover all fees paid by the consumer under a void agreement, costs, and reasonable attorney's fees.

> (c) In addition to any other remedies provided by this subchapter, a consumer who is aggrieved by a violation of this subchapter … may recover:

>> (1) actual damages;

>> (2) punitive damages for acts or practices under a void agreement; and

>> (3) the costs of the action, including reasonable attorney's fees based on the amount of time involved.

TEX. FIN. CODE § 394.215.

106. Plaintiff and each class member are entitled to recover as actual damages from Lexxiom all sums received by Lexxiom either directly or through another Defendant or third party.

107. Plaintiff and class members are entitled to recover punitive damages from Lexxiom.

108. Plaintiff, individually and as representative of the class, has been forced to retain counsel to assist in bringing this action. As such, Defendant Lexxiom is liable to the Plaintiff and the class for reasonable attorneys' fees and costs of this action.

## COUNT 6: AS AGAINST LEXXIOM:

### INJUNCTION AGAINST VIOLATIONS OF THE TEXAS FINANCE CODE

109. Defendant Lexxiom's violations of the TDAA entitle Plaintiff and the class to injunctive relief. The TDAA provides for the following relief:

> An aggrieved consumer may sue for injunctive and other appropriate equitable relief to stop a person from violating this subchapter.

TEX. FIN. CODE § 394.215 (d).

110.   Plaintiff, individually and as representative of the class, asks the Court to enter a permanent injunction against Lexxiom prohibiting if from entering any contract for debt management services with a person located in Texas, performing any debt management services regarding a person located in Texas, or assisting any other person or entity in performing any debt management services regarding a person located in Texas.

111.   Plaintiff, individually and as representative of the class, has been forced to retain counsel to assist in bringing this action.  As such, Defendant Iniguez Firm is liable to the Plaintiff and the class for reasonable attorneys' fees and costs of this action.

### COUNT 7:  AS AGAINST ALL DEFENDANTS:

### CLAIM FOR DAMAGES FOR CONSPIRACY

112.   Defendants engaged in a civil conspiracy to obtain money from consumers, including Plaintiff, for debt management services without the provider of such services being licensed as required by Texas law.

113.   Each Defendant was aware that one or more of the other Defendants sought to obtain money from consumers, including Plaintiff, for debt management services without the provider of such services being licensed as required by Texas law.

114.   Each Defendant formed the specific intent to assist one or more of the other Defendants to obtain money from consumers, including Plaintiff, for debt management services without the provider of such services being licensed as required by Texas law.

115.    Each of the actions by Defendants alleged above were made in furtherance of the Defendants' conspiracy to obtain money from consumers, including Plaintiff, for debt management services without the provider of such services being licensed as required by Texas law.

116.    Plaintiff and each class member are entitled to recover as actual damages from Defendants, jointly and severally, all sums they paid to any Defendant either directly or through another Defendant or third party.

### COUNT 8:  AS AGAINST ALL DEFENDANTS:

### CLAIM FOR RELIEF FOR MONEY HAD AND RECEIVED.

117.    As a result of the void contracts between Plaintiff and class members with Debt Choice and Plaintiff and class members with Iniguez Firm, Defendants came to hold sums of money which, in equity and good conscience, belong to Plaintiff and the class members.

118.    The contracts between Plaintiff/class members and Debt Choice are void, as detailed above, and therefore any monies that Defendant Debt Choice received should be returned to Plaintiff and the class members.

119.    The contracts Plaintiff/class members and Iniguez Firm are void.  Therefore, any monies received by Defendants as a result of that void contract should be returned to Plaintiff and the class members.

120.    Plaintiff seeks recovery of all such sums of money received by Defendants on behalf of herself and the class.

### COUNT 9:  AS AGAINST ALL DEFENDANTS:

### CLAIM FOR RELIEF FOR UNJUST ENRICHMENT.

121.   As outlined above, the "contracts" entered into by Debt Choice and Iniguez Firm are

void.  As such, the Defendants were unjustly enriched when they received monies under

these void contracts.

122.   Plaintiff, on behalf of herself and the class, seeks to recover all monies that Defendants

received as a result of the void contracts.

### COUNT 10:  AS AGAINST ALL DEFENDANTS:

### EXEMPLARY DAMAGES

123.   Exemplary damages should be awarded against Defendants because the harm with

respect to which the Plaintiff seeks recovery of exemplary damages resulted from gross

negligence (which means that the Defendants' acts and/or omissions (i) when viewed objectively

from the Defendants' standpoint at the time of the acts and/or omissions involved an extreme

degree of risk, considering the probability and magnitude of potential harm to others and (ii)

were such that the Defendants had an actual, subjective awareness of the risk involved, but

nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others).

### JURY DEMAND

124.   Plaintiff and the class request a trial by jury against Defendants on all issues triable as a

matter of right.

**PLAINTIFF'S ORIGINAL CLASS COMPLAINT AND JURY TRIAL DEMAND – Page 28**

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff prays that the Defendants be cited to appear and answer herein, and upon final trial of this cause, the Court issue judgment that Plaintiff have and recover against Defendants:

a)  actual damages;

b)  exemplary damages;

c)  injunctive relief as set out above;

d)  pre-judgment and post-judgment interest at the highest legal rate;

e)  legally-available reasonable and necessary attorneys' fees;

f)  costs; and

g)  all other relief, general and special, legal and equitable, to which Plaintiff and the
     Plaintiff Class is entitled.

Respectfully submitted,

By: ___/s/ Bonner C. Walsh__
        Jeffrey L. Weinstein
        State Bar No. 21096450
        Bonner C. Walsh
        State Bar No. 24051766

**WEINSTEIN LAW**
518 East Tyler Street
Athens, Texas 75751
(903) 677-5333
(903) 677-3657 – facsimile

**COUNSEL FOR PLAINTIFF**